## REEVES v. SIFFORD.

No. 13311—Opinion Filed April 29, 1922.

Rehearing Denied June 17, 1924.

**1. Brokers—Right to Commission — Owner Alone Effecting Sale.**

To entitle an agent to a commission there must be an employment, and his services must be the immediate and effective cause of the bargain. But if the services of the agent, whatever they be, fail to accomplish a sale, and afterwards the owner, through his own efforts, without fraud, effects a sale, the agent is not entitled to a commission, because he is not the procuring cause of the sale.

**2. Appeal and Error—Questions of Fact—Verdict.**

Where the facts in a case are disputed, and the case is submitted to the jury under proper instructions, the verdict will not be disturbed on appeal, if there is evidence to support the findings of the jury.

**3. Same—Verdict Not Disturbed.**

In this case, record examined, and found that the case was fairly tried, the jury properly instructed, and there is ample evidence to support the findings of the jury, and same will not be disturbed.

(Syllabus by Maxey, C.)

Commissioners' Opinion, Division No. 1.

Error from District Court, Garvin County; W. L. Eagleton, Judge.

Action by L. A. Reeves, against L. P. Sifford, to recover commission on a sale of land. There was judgment for the defendant, and plaintiff appeals. Affirmed.

Bowling & Farmer, for plaintiff in error.

Blanton, Osborn & Curtis, for defendant in error.

Opinion by MAXEY, C. This is an action growing out of a real estate deal in which the plaintiff, L. A. Reeves, claims that he had a contract with the defendant to sell a piece of land of something over 300 acres belonging to the defendant, L. P. Sifford, and his father-in-law, Mr. Ridgeway. It appears that the defendant, Sifford, entered into a contract with Reeves the first day of August 1919, whereby he listed the land in question with the plaintiff, Reeves, and authorized him to sell the same at a price of $75 an acre. The contract between Reeves and Sifford was to expire the first day of December, 1919. The plaintiff, Reeves, does not appear to have done anything about selling the land except he claims he wrote the prospective purchaser, Dr. Royster, two or three letters telling him that he could sell the place for $65 an acre instead of $75, the listed price. Dr. Royster claims that he never received these letters or had any communication with Reeves until some time the latter part of December after his contract had expired, and after he and a man by the name of Hill heard of the Sifford place, and he asked Hill to go and look at it and report to him. This was about the first of December or a little after that Hill went and looked at the place and reported to Dr. Royster. Some eight or ten days afterwards, Royster went and looked over the place himself. Up to this time, Royster had not heard nor had any communication with Reeves, the plaintiff, at all. Reeves claims that sometime after the first of December, he met Hill on the streets of Pauls Valley, and in their conversation, Hill asked him if he knew anything about the O'Harrah or Sifford place, and Reeves replied that he did, and they had some conversation about the place. After Hill looked the place over and reported to Dr. Royster, the Dr. went and looked it over and decided that he would buy it, if the price was right, and, after some negotiations, they agreed on the price, Mr. Ridgeway, the father-in-law of the defendant Sifford, who was living on the place, and also claiming to be a joint owner with Sifford of the place, said that he would not sell the place at all unless he could sell his cattle. Matters drug along until sometime in February, 1920, when Ridgeway made some arrangements to take care of his cattle and the sale was consummated to Dr. Royster. Soon after Reeves brought this suit for his commission. Hill and Dr. Royster were quite positive in their testimony they had no communication or dealing with Reeves about the place and did not know that he claimed to have the right to sell the place until after they had closed the deal themselves. Mr. Sifford, the defendant, testified that he lived in Columbus, Ohio, and that his father-in-law, Mr. Ridgeway, lived on the place, and that after listing the place with Reeves for sale the first of August, that he had no further conversations or dealings with Reeves until after he made the sale to Royster. Reeves testified

that he had several conversations with Hill about selling the place, and that Hill promised to price it to Dr. Royster, and that he wrote Royster some letters and called him up and talked to him over the telephone. Both these conversations are denied by Hill and Dr. Royster as occuring before the first of December, and Sifford, the defendant, was positive in his testimony that he had no conversation or communication of any kind with Reeves about the place from the first of August until after his contract expired. With this state of the record, the case was tried to the court and a jury, and the case was submitted to the jury on instructions that were more favorable to Reeves than he was entitled to under the law. The jury heard the witnesses testify, and heard the instructions of the court and rendered a verdict in favor of the defendant, Sifford. There was a conflict in the testimony between Reeves and Sifford, and between Reeves and Hill and Royster, and the jury evidently believed the testimony of Sifford and Royster, and we cannot say that they were wrong. In fact, we are inclined to believe the evidence produced by the defendant. It is certainly strong enough to justify the jury in finding in favor of the defendant, Sifford, and under the rule adopted in this jurisdiction, that where a case is tried to a jury, the jury's findings will not be disturbed, if there is any evidence to support it. In this case, we hold that there is ample evidence to support the verdict of the jury, and that the judgment of the trial court should, in all things, be affirmed.

By the Court: It is so ordered.